FILED
U.S. DISTRICT COURT E.D.N.Y

★ JUL 20 2011 ★

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK BROOKLYN OFFICE

---

In the Matter of the Application of

Oleg Vladimirovich Deripaska, for an order, pursuant
to 28 U.S.C. § 1782, to obtain discovery from
Alexandra Kogan and JPMorgan Chase Bank for use
in an action pending in the High Court of Justice,
Queen's Bench Division, Commercial Court, styled
*Michael Cherney v. Oleg Vladimirovich Deripaska.*

Misc. No.



GLEESON, J.

---

## MEMORANDUM OF LAW IN SUPPORT OF
## OLEG VLADIMIROVICH DERIPASKA'S APPLICATION
## PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER COMPELLING
## DISCOVERY FOR USE IN A FOREIGN LITIGATION

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ...........................................................................................................2

ARGUMENT ................................................................................................................................7

I.     MR. DERIPASKA'S APPLICATION SATISFIES THE REQUIREMENTS OF
28 U.S.C. § 1782 ..............................................................................................................7

II.    THE COURT SHOULD EXERCISE ITS BROAD DISCRETION UNDER §
1782 AND GRANT MR. DERIPASKA'S APPLICATION .........................................8

      A.    The Requested Discovery May Be Otherwise Unobtainable Absent § 1782
Relief.....................................................................................................................10

      B.    The English High Court of Justice Would Be Receptive to the Requested
Discovery Because It Is Highly Relevant to the English Action...........................10

      C.    Enforcing § 1782 Here Would Not Be Unduly Intrusive or Burdensome.............12

III.   MR. DERIPASKA MOVES BY ORDER TO SHOW CAUSE BECAUSE OF
THE IMPENDING HEARING IN THE ENGLISH ACTION ......................................12

CONCLUSION...........................................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*In re Application of Esses,*
101 F.3d 873 (2d Cir. 1996)..................................................................................7, 12

*In re Application of Euromepa S.A.,*
51 F.3d 1095 (2d Cir. 1995)..................................................................................8, 9

*In re Application of Gianoli Aldunate,*
3 F.3d 54 (2d Cir. 1993).................................................................................. 7, 8-9

*In re Application of Guy,*
No. M. 19-96, 2004 WL 1857580 (S.D.N.Y. Aug. 19, 2004) .......................................8, 10, 11

*In re Application of Malev Hungarian Airlines,*
964 F.2d 97 (2d Cir. 1992)....................................................................................9

*In re Application of Servicio Pan Americano de Proteccion, C.A.,*
354 F. Supp. 2d 269 (S.D.N.Y. 2004)........................................................... 9, 10-11

*In re Grupo Qumma, S.A.,*
No. M 8-85, 2005 U.S. Dist. LEXIS 6898 (S.D.N.Y. April 21, 2005) .....................................9

*Intel Corp. v. Advanced Micro Devices, Inc.,*
542 U.S. 241 (2004)................................................................................... *passim*

*In re Application for an Order Permitting Metallgesellschaft AG To Take Discovery,*
121 F.3d 77 (2d Cir. 1997).....................................................................................10

### <u>Statutes</u>

28 U.S.C. § 1782................................................................................... *passim*

Applicant Oleg Vladimirovich Deripaska respectfully submits this Memorandum of Law in support of his Application for an order, pursuant to 28 U.S.C. § 1782, authorizing the issuance of subpoenas compelling JPMorgan Chase Bank ("Chase") and Alexandra Kogan to produce certain documents and compelling Ms. Kogan to provide deposition testimony for use in a judicial proceeding pending in London, England (the "English action").

## PRELIMINARY STATEMENT

Mr. Deripaska, who is being sued by Michael Cherney in the English action, seeks narrowly-tailored discovery from third parties Chase and Ms. Kogan. Ms. Kogan is a notary public who works at a Chase branch in Brighton Beach, Brooklyn. Ms. Kogan's notary seal appears on two documents concerning Mr. Cherney that have become highly relevant in the English action for reasons explained below. Mr. Deripaska's representatives have thus asked Ms. Kogan and Chase to produce any documents in their possession concerning the notarization of Mr. Cherney's documents and have asked to interview Ms. Kogan. Because Ms. Kogan will not speak to Mr. Deripaska's representatives, and because neither Chase nor Ms. Kogan will produce the documents requested, Mr. Deripaska has no choice but to seek this Court's intervention on an expedited basis.

As explained further below, Mr. Deripaska's application satisfies each of the statutory requirements of Section 1782:

(i)     the persons from whom discovery is sought—Ms. Kogan and Chase—are present within the judicial district of this Court;

(ii)     the narrowly-tailored discovery requested is sought for use in a proceeding before a foreign tribunal—the High Court of Justice, Queens Bench Division, Commercial Court in London, England; and

(iii)     the application for discovery is made by an "interested person" with respect to the foreign proceeding, as Mr. Deripaska is a defendant in the English Action.

1

Mr. Deripaska's Application is also consistent with the factors identified by the U.S. Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). Indeed, because the English Court adjourned a prior proceeding specifically to allow Mr. Deripaska to gather evidence from Ms. Kogan, granting Mr. Deripaska's Application would serve Section 1782's fundamental purpose of providing an effective means for obtaining evidence from persons in the United States in aid of litigants and tribunals in foreign litigation.

## STATEMENT OF FACTS

Mr. Deripaska is the defendant in the English action. (Declaration of Marc L. Greenwald, dated July 20, 2011, ("Greenwald Dec."), ¶ 3.) Quinn Emanuel represents Mr. Deripaska in the English action, through attorneys in its London office. (*Id.*) Michael Cherney is the claimant in the English action. (*Id.*, ¶ 4.) Dechert LLP represents Mr. Cherney in the English action. (*Id.*)

### Mr. Cherney Seeks To Avoid Testifying In Person Before the English Court In Support Of His Claims In England

In 2006, Mr. Cherney brought the English action to enforce what he alleges was an agreement between himself and Mr. Deripaska executed on March 10, 2001 ("the alleged 2001 Agreement"). (Greenwald Dec., ¶ 5.) Mr. Deripaska denies that he entered into the alleged 2001 Agreement. (*Id.*) To the contrary, Mr. Deripaska alleges that he was subject to a protection racket run by organized crime groups represented by Mr. Cherney. (*Id.*, ¶ 5 and Ex. A.)

Despite having brought suit against Mr. Deripaska in England, Mr. Cherney is currently seeking the English court's permission to give testimony in support of his claims by video link from Israel, where he currently resides. (*Id.*, ¶ 6.) Authorities in Spain have issued a warrant for Mr. Cherney's arrest, and Mr. Cherney has argued that if he were to travel to England to testify, he would risk being arrested and extradited to Spain. (*Id.*) Trial in the English Action is currently scheduled for April 2012. (*Id.*)

2

In support of his request to be allowed to testify from Israel, Mr. Cherney has represented to the English court that he has not left Israel since May 23, 2009. (*Id.*, ¶ 7 and Exs. B and C.) Mr. Deripaska has presented evidence contradicting Mr. Cherney's claim not to have traveled outside Israel since May 2009. Specifically, Mr. Deripaska submitted two notarized documents indicating that Mr. Cherney appeared before a notary in New York State on May 26, 2010. (*Id.*, ¶ 8 and Exs. D, E, and F.) Both documents bear the official seal and signature of a New York notary, Alexandra Kogan, and both documents indicate that Mr. Cherney appeared before Ms. Kogan within New York State on May 26, 2010. (*Id.*, Exs. E and F.) The Parking Space Deed, for example, states: "On the 26th day of May, 2010, before me, the undersigned, a Notary Public in and for said State, personally appeared MICHAEL CHERNY personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument . . . ." (*Id.*, Ex. E at 3.)

Despite Ms. Kogan's notarization of the Parking Space Deed and the Smoke Detector Affidavit, Mr. Cherney denies that he was present in New York on May 26, 2010. (*Id.*, ¶ 9.) He has represented to the English court that he signed the documents in Israel, and that his nephew Leonid Chernoy then arranged for Leonid's mother to deliver the signed documents to the New York notary. (*Id.*, ¶ 9 and Ex. B.) Neither Mr. Cherney nor his nephew claims to have been in Ms. Kogan's presence when she notarized the documents. (*Id.*)

**The June 20, 2011, Conference Before The English Court**

There was an application in the English action before Mr. Justice Flaux on June 20, 2011. (*Id.*, ¶ 10.) The primary focus of the June 20 hearing was whether the English court would allow Mr. Cherney to give testimony in support of his claims by video link from Israel, rather than appearing in person to testify in England. (*Id.*, ¶ 10 and Ex. G.) Counsel for Mr. Deripaska argued that if Mr. Cherney was willing to travel to America in 2010, when the Spanish warrant for his arrest

3

was already outstanding, there was no reason to allow Mr. Cherney to avoid traveling to England to testify in support of his claims against Mr. Deripaska. (*Id.*, ¶ 10 and Ex. G at 22-23.)

The hearing transcript indicates that Mr. Justice Flaux took very seriously the evidence that Mr. Cherney was present in New York State in May 2010. As he framed the issue to counsel for Mr. Deripaska: "If you are right and if Miss [Kogan] comes forward and says, 'Actually Mr. Cherney did appear before me on 26 May 2010,' then Mr. Cherney has some fairly difficult questions to answer." (*Id.*, ¶ 11 and Ex. G at 25.) And further:

> MR. JUSTICE FLAUX: I could say I suppose at that stage I am simply not satisfied that Mr. Cherney is someone who is not prepared to travel. The difficulty is that you say for example, that a New York notary may simply be prepared to, as it were, sign some statement that says that he was there, but if a Notary Public goes on affidavit and actually says that, it seems to me that is pretty compelling evidence that she is telling the truth. **We are into some fairly serious allegations here.** . . . If the court concluded that on the evidence that it was fairly clear he had been to New York, that would have, as I see it, a very serious effect, which is that I do not see how, in those circumstances, I could say therefore he should be entitled to give his evidence by video link.

(*Id.*, ¶ 11 and Ex. G at 35-36 (emphasis added).)

Given the centrality of this issue to the question of whether Mr. Cherney should be allowed to testify in the English court by video, Mr. Justice Flaux adjourned the hearing to give Mr. Deripaska additional time to investigate the circumstances surrounding Ms. Kogan's notarization of the Parking Space Deed and Smoke Detector Affidavit. (*Id.*, ¶ 12 and Ex. G at 36.) Mr. Justice Flaux specifically held that Mr. Deripaska's attorneys "should have the opportunity to get evidence from the Notary Public in New York." (*Id.*) In his words, "I think it would be quite wrong to [make a decision], because I have a distinct feeling that I do not have a complete picture." (*Id.*) He ordered the parties to serve any new evidence on each other seven days before the hearing resumes in July. (*Id.* at § 12 and Ex. G at 37.) The hearing is now scheduled to resume on July 26, 2011.

4

## Mr. Deripaska's Representatives Attempt To Contact Ms. Kogan

On June 20, 2011, shortly after the adjournment of the English status conference, a private investigator and a summer associate with Quinn Emanuel attempted to speak with Ms. Kogan on Mr. Deripaska's behalf. They determined that Ms. Kogan works for Chase in Brighton Beach, Brooklyn and went to the Chase branch where Ms. Kogan works to attempt to speak with her. (*Id.*, ¶ 13 and Ex. H.) Ms. Kogan would not speak to the private investigator or the Quinn Emanuel summer associate about the notarizations for Mr. Cherney. (*Id.*, ¶ 13 and Ex. H.) Instead, Ms. Kogan's supervisor told them to direct any questions to Ms. Kogan in writing. (*Id.*, ¶ 13 and Ex. H.) Ms. Kogan made a comment, however, indicating that she had already been contacted that same day by someone in connection with the English action. (*Id.*, ¶ 13 and Ex. H.) No one had previously contacted Ms. Kogan on behalf of Mr. Deripaska. (*Id.*, ¶ 13 and Ex. H.)

Between June 20, 2011, and July 13, 2011, Quinn Emanuel made multiple attempts to acquire information from and/or arrange an interview with Ms. Kogan. (*Id.*, ¶¶ 15-21 and Exs. J, K, L, M, and N.) Quinn Emanuel also asked Chase, through its in-house counsel, to produce documents relating to Ms. Kogan's notarization of Mr. Cherney's documents. (*Id.*) Chase would not produce Ms. Kogan for examination, however, or agree to produce documents concerning her notarization of the documents. (*Id.*, ¶¶ 19-21 and Exs. M and N.)

In-house counsel for Chase, who has indicated that she represents Ms. Kogan in this matter and has requested that all of Quinn Emanuel's communications on behalf of Mr. Deripaska be directed to her, informed Quinn Emanuel on July 13, 2011, that "it is Kogan's practice to only notarize documents for persons present before her upon the presentation of photo identification and that she cannot recall every particular prior notarization from over one year ago or otherwise." (*Id.*, ¶ 21 and Ex. N.) This response was phrased in such a way that it did not answer the question whether Ms. Kogan could recall notarizing Mr. Cherney's documents in particular. In response to a

follow-up inquiry from Quinn Emanuel, Ms. Spiritis responded that, "[w]ith respect to anything further, as indicated, we will not be producing additional information via correspondence or otherwise without a subpoena." (*Id.*, ¶ 21 and Ex. N.)

## Mr. Cherney Produces Witness Statements In the English Action

By letter dated July 15, 2011, Quinn Emanuel informed Mr. Cherney's English solicitors, Dechert LLP, that they intended to seek Ms. Kogan's deposition in the U.S. on an expedited basis, but that it was unlikely the deposition would be completed in time for the hearing on July 26, 2011. (*Id.*, ¶ 22 and Ex. O.) Dechert replied that its client would be producing evidence in the English action that would make Ms. Kogan's deposition unnecessary. (*Id.*, ¶ 22 and Ex. O.)

On July 19, 2011, counsel for Mr. Cherney produced nine witness statements concerning Mr. Cherney's whereabouts on May 26, 2010, the documents at issue, and the Spanish criminal proceedings concerning Mr. Cherney. (*Id.*, ¶ 22 and Exs. P, Q, R, S, T, U, V, W, and X.) Far from answering the questions raised by the Parking Space Deed and the Smoke Detector Affidavit, these nine witness statements, when read together, tell a hopelessly confused story. Several of the witnesses describe their whereabouts and activities on May 26, 2010. Mr. Cherney, for example, asserts that his phone bills demonstrate that he was in Israel on May 26, 2010. (*Id.*, Ex. P at ¶¶ 9-12; *see also id.*, Ex. T at ¶ 5 (Mr. Cherney's brother stating that "I do not know what I was doing on 26 May 2010 but I was certainly in Israel.")) Astonishingly, however, two of Mr. Cherney's witnesses state unequivocally that the notarized documents had not even been prepared or presented to Mr. Cherney as of May 26, 2010. (*Id.*, Ex. U at ¶¶ 5, 8, and Ex. V at ¶ 15.) Anna Latkovskaia, who purportedly prepared the documents for the Cherney family, states that "I have no knowledge as to the actual date when the notarisation took place but from the chronology which I have described, **it cannot have been on 26 May 2010.**" (*Id.*, Ex. V at ¶ 15 (emphasis added).)

Most importantly, Dechert LLP has not produced witness statements from Ms. Kogan or anyone affiliated with Chase. One of Mr. Cherney's attorneys, Brian Edward Maas, states that he spoke with Ms. Kogan on June 20, 2011, but that she did not provide him any information about the documents at issue here. (*Id.*, Ex. W at ¶¶ 8-10.)

## ARGUMENT

## I.     MR. DERIPASKA'S APPLICATION SATISFIES THE REQUIREMENTS OF 28 U.S.C. § 1782

Section 1782 of Title 28 of the United States Code, entitled "Assistance to foreign and international tribunals and to litigants before such tribunals," is designed to assist applicants, such as Mr. Deripaska, in obtaining evidence that is accessible in the United States and relevant to proceedings in foreign jurisdictions. The statute provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusations. The order may be pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782 (2007). The Second Circuit has stated that 28 U.S.C. § 1782 has taken on increasingly "broad applicability" to litigation with international aspects. *In re Application of Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993).

In order to invoke Section 1782, an applicant must meet three conditions:

> (1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or "any interested person."

*In re Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996) (per curiam); *see also Aldunate*, 3 F.3d at 58.

7

Mr. Deripaska's application satisfies each of these three conditions. *First*, the parties from whom discovery is sought, Chase and Ms. Kogan, are present within the Eastern District of New York. Chase does business throughout the district, including at its Brighton Beach branch, where Ms. Kogan works. *Second*, the documents and deposition testimony requested are for use in, and narrowly tailored to, the English Action. *See, e.g., In re Application of Guy*, No. M. 19-96, 2004 WL 1857580, at *3 (S.D.N.Y. Aug. 19, 2004) (refusing to vacate grant of discovery pursuant to Section 1782 for use by the English High Court of Justice, finding that "the High Court of Justice, Chancery Division . . . hears the testimony of witnesses and receives documents in evidence, very much as American courts do"). Mr. Deripaska seeks nothing more than what the English court thought necessary to get the "complete picture"—information concerning Ms. Kogan's notarization of the documents at issue. *Third*, Mr. Deripaska is clearly an "interested person," as he is defending himself against Mr. Cherney's claims in the English Action.

As Mr. Deripaska's application meets all of the requirements of Section 1782, this Court should authorize service of a subpoena commanding Chase and Ms. Kogan to produce documents and commanding Ms. Kogan to provide deposition testimony for use in the English Action.

II.  **THE COURT SHOULD EXERCISE ITS BROAD DISCRETION UNDER § 1782 AND GRANT MR. DERIPASKA'S APPLICATION**

Where, as here, the statutory requirements for § 1782 are satisfied, courts in this Circuit are encouraged to exercise their broad discretion and grant the requested discovery. *See In re Application of Euromepa S.A.,* 51 F.3d 1095, 1102 (2d Cir. 1995) ("We read section 1782's investment of broad discretion in the district courts as an invitation for district judges to fashion creative means of implementing the statute's double goal: promoting efficiency in international litigation and persuading other nations, by example, to do the same."); *see also Aldunate,* 3 F.3d at 57 (quoting from the record of the U.S. Senate, S. Rep. No. 88-1580, ¶ 9 (1964), *as reprinted in*

8

1964 U.S.C.C.A.N. 3782, 3788 ("the primary intent of [Section 1782] was to 'clarify and liberalize' existing U.S. procedures for assisting foreign and international tribunals and litigants in obtaining oral and documentary evidence in the United States.")); *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) ("28 U.S.C. § 1782 leaves the issuance of an appropriate order to the discretion of the court") (internal citations omitted).

Importantly, each of the considerations identified by the Supreme Court in *Intel*, 542 U.S. 241, weighs in favor of granting the discovery Mr. Deripaska seeks. These considerations include whether: (1) a foreign court could order the parties to produce the requested evidence; (2) the nature or character of the foreign tribunal and proceeding indicate that the foreign government may not be receptive to U.S. discovery; (3) it appears that the applicant may be attempting to circumvent foreign discovery limits; (4) or enforcing the statute would be "unduly intrusive or burdensome." *Intel*, 541 U.S. at 264-65.

Because the *Intel* factors here weigh in favor of permitting the requested discovery, Mr. Deripaska's application should be granted. *See, e.g., In re Application of Servicio Pan Americano de Proteccion, C.A.*, 354 F. Supp. 2d 269, 275 (S.D.N.Y. 2004) (granting application for discovery upon consideration of *Intel* factors and a determination that, as a whole, the information requested was directly relevant to the party's defense in the foreign suit and most efficiently obtained in the U.S.); *In re Grupo Qumma, S.A.*, No. M 8-85, 2005 U.S. Dist. LEXIS 6898, at **11-12 (S.D.N.Y. April 21, 2005) (granting request for discovery upon finding factors in support of Section 1782 application more persuasive than those in opposition, where the discovery was sought in good faith from a non-participant to the foreign litigation, and the litigation was between private parties in civil court).

9

A.   **The Requested Discovery May Be Otherwise Unobtainable Absent § 1782 Relief**

Section 1782 is designed to allow parties to avail themselves of discovery that may not otherwise be obtainable. *See In re Application for an Order Permitting Metallgesellschaft AG To Take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) ("if it were clear that discovery were equally available in both foreign and domestic jurisdictions, a district court might rely on this evidence to conclude that the § 1782 application was duplicative"). As the Supreme Court recognized in *Intel*, the need for the U.S. courts' assistance is most apparent where, as here, discovery is sought from a non-participant in the foreign proceedings. *See Intel*, 542 U.S. at 264 ("in contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."); *In re Application of Guy*, 2004 WL 1857580, at *3 (authorizing discovery from non-participants to action pending before the English High Court of Justice).

Because Ms. Kogan's deposition testimony and any relevant documents are readily available in the U.S. and are not obtainable in England, this Court should not find cause to limit or deny the discovery sought.

B.   **The English High Court of Justice Would Be Receptive to the Requested Discovery Because It Is Highly Relevant to the English Action**

Mr. Deripaska's application satisfies the second and third *Intel* tests: the English Court is receptive to this discovery and, far from circumventing foreign discovery limits, Mr. Deripaska seeks only to provide the English Court with the "complete picture" it requires to decide the issues before it. Where discovery pursuant to Section 1782 will produce information that is relevant to the underlying foreign dispute, it is more likely that the foreign court would be "receptive" to such evidence. *See In re Application of Servicio Pan Americano de Protection*, 354 F. Supp. 2d at 274 (granting discovery request under Section 1782 based in part upon the court's finding that "the

10

discovery Pan Americana is seeking would be readily available and relevant to the litigation [in Venezuela]").

The discovery that Mr. Deripaska seeks is directly relevant to the English Action. Mr. Justice Flaux, hearing the application in the English action, summed up the issue to counsel for Mr. Cherney: "If you are right and if Miss [Kogan] comes forward and says, 'Actually Mr. Cherney did appear before me on 26 May 2010,' then Mr. Cherney has some fairly difficult questions to answer." (Greenwald Dec., ¶ 11 and Ex. G at 25.) Mr. Justice Flaux stated that affidavit evidence from Ms. Kogan would be "pretty compelling evidence that she is telling the truth." (*Id.*, Ex. G at 35-36.) He adjourned the hearing specifically to allow Mr. Deripaska to seek this evidence, stating that Mr. Deripaska's attorneys "should have the opportunity to get evidence from the Notary Public in New York." (*Id.*, Ex. G at 36.)

As courts in the Southern District have previously observed, English trial courts, including the High Court of Justice, are receptive to relevant discovery obtained via a Section 1782 order:

> Here, the English Action is pending in the High Court of Justice, Chancery Division, a trial court which (as even a quick perusal of its July 30, 2004 decision makes clear) hears the testimony of witnesses and receives documents in evidence, very much as American courts do. And the nature of the English Action suggests that discovery is appropriate to obtain relevant testimony and documents.

*In re Application of Guy*, 2004 WL 1857580, at *2 (ordering discovery pursuant to Section 1782 for use in English action pending in English High Court of Justice). Here, the English Court will be "receptive" to the requested discovery. *See Intel*, 542 U.S. at 265 (noting that Section 1782 relief should be granted where the requested discovery would be of assistance in the foreign proceeding due to the "receptivity of the foreign government" to "U.S. federal-court judicial assistance").

11

C.  **Enforcing § 1782 Here Would Not Be Unduly Intrusive or Burdensome**

Finally, the narrowly-tailored discovery that Mr. Deripaska requests would be neither intrusive to Chase's operations nor burdensome for either Chase or Ms. Kogan to produce. *See Intel*, 542 U.S. at 265 (citing burden and intrusiveness as relevant considerations). The potential burden and expense of compliance would be minimal (particularly for a corporation of Chase's size) because the requested discovery is limited and involves only documents relating to the notarization of two documents and a single deposition on the issue from Ms. Kogan. *See, e.g., In re Application of Esses*, 101 F.3d at 876 (affirming limited discovery where there was no "indication that the district court's order is overly burdensome or duplicative"). The relevant documents and testimony should thus be easily identifiable, readily accessible and not burdensome to produce.

*    *    *

In sum, Mr. Deripaska satisfies the three statutory requirements of Section 1782 and as a result, this Court has broad discretion to grant the Section 1782 application. Because each of the *Intel* considerations weighs in favor of allowing discovery here, Mr. Deripaska's application should be granted.

III.  **MR. DERIPASKA MOVES BY ORDER TO SHOW CAUSE BECAUSE OF THE IMPENDING HEARING IN THE ENGLISH ACTION**

Finally, Mr. Deripaska moves by Order To Show Cause because there is a hearing scheduled for July 26, 2010, in the English action to address, *inter alia*, Ms. Kogan's notarization of documents in New York. Despite Mr. Deripaska's diligent pursuit of documents and information since the previous hearing in the English action, he has been rebuffed by Ms. Kogan's initial refusal to speak with his counsel, her vacation, and by her final refusal to produce documents or information absent a subpoena. Mr. Deripaska also delayed this application briefly due to the representation of Dechert LLP that Mr. Cherney would produce evidence making it unnecessary to subpoena Ms. Kogan. Mr.

Deripaska brought this application by Order To Show Cause as soon as it became apparent that the witness statements produced By Dechert LLP in the English action raised more questions than they answered. Mr. Deripaska therefore respectfully seeks to proceed on an expedited basis in this Court so that, even if Ms. Kogan's deposition cannot be taken before July 26, Mr. Deripaska may inform the English Court at the July 26 hearing that expedited discovery is underway in the U.S. and that Ms. Kogan and Chase will produce documents and information concerning these issues in a timely manner.

## CONCLUSION

For all of the foregoing reasons, Mr. Deripaska respectfully requests that this Court authorize issuance of the proposed subpoenas commanding Chase and Ms. Kogan to produce the requested documents on an expedited basis and commanding Ms. Kogan to provide deposition testimony on an expedited basis for use in the English Action.

DATED:   New York, New York
         July 20, 2011

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: _____

Marc L. Greenwald
(marcgreenwald@quinnemanuel.com)
Frances S. Lewis
(franceslewis@quinnemanuel.com)

51 Madison Avenue, 22nd Floor,
New York, New York  10010-1601
(212) 849-7000

*Attorneys for Applicant Oleg Vladimirovich Deripaska*

13