documents on the Court file and cannot participate in the proceedings in any way (i.e. by submitted applications for consideration by the Examining Judge).

18. On 15 December 2009 Mr Batkov, Mr Cherney's Bulgarian lawyer was admitted as a party to the proceedings and it was as a consequence of this I, acting as Mr Batkov's lawyer, was permitted to access documents on the Court file. I was authorized by Mr Batkov to share with Mr Cherney the information and documents which I obtained from the Court file. I comment further on Mr Batkov's position in paragraph 27 below. I should also explain, by way of clarification that Attorney Isidro Orquin Cedenilla who signs submissions on behalf of Mr Cherney and Mr Batkov, and to whom orders are often addressed by the court is the designated "Court Representative Attorney" ("Procurador de los Tribunales"). Under the Spanish system Court Representative Attorney's are the persons who receive notices/orders, file documents at court and generally as a liaison between the client's legal representatives and the court. They fulfil a function akin to that of a clerk.

**Steps taken on Mr Cherney's behalf in Spain**

19. My firm, and me in particular, as a specialist in business and financial crime with an international element, were instructed on 1 July 2009 to represent both Mr Cherney and Mr Batkov in the Spanish Criminal proceedings. Both of them were *"imputado"* in the Spanish Criminal Proceedings. Another of my firm's offices had been acting for Mr Cherney in connection with two civil claims which he was pursuing in the Denia and Valencia civil court's respectively against Frank Neuman.

20. Mr Cherney wrote directly to the Court [228 - 285 JMBT1] on 6 August 2009 stating that he denied the offences imputed to him; providing the Court with his residential address in Israel; providing my name and contact details and confirming that I had been appointed as his lawyer in Spain; and offering to cooperate fully with the Court in clarifying any facts imputed to him in the proceedings, and also asking to make a statement in Israel in person or by video conference, as allowed by the European Convention on Mutual Assistance in Criminal Matters of 20 April 1959 (the "European Convention"). Attached to this letter was the judgment delivered by the Supreme Court of Switzerland on January 9, 2008, which had

7

11393360

exonerated Mr Cherney from similar charges to the effect that he belonged to the criminal organization Izmailovskaya and had engaged in money laundering in Switzerland after almost a decade of investigations in Switzerland, together with a certified translation of the judgment into Spanish.

21. Upon reviewing the Court's file (in December 2009), I discovered that the Examining Judge had attached a copy of Mr Cherney's letter to the Court file without sending any reply to it, and that he had sent a copy to the Public Prosecutor requesting the Prosecutor to respond to it as he considered appropriate [286 – 287 JMBT1].

22. On 17 August 2009 the Public Prosecutor informed the Court that he had received the letter from Mr Cherney and stated that since Mr Cherney had been the subject of an international arrest warrant, which he said he knew about and had evaded, the correct procedure was to wait for the warrant to be enforced. The Public Prosecutor also asked the Court to ask the Spanish Government to send a request to the State of Israel for Mr Cherney's extradition, since in his letter Mr Cherney had given his exact address in Israel [288 – 289 JMBT1].

23. On 9 September 2009 the Examining Judge agreed to the Public Prosecutor's request and consequently asked the Spanish Government to apply to the State of Israel for Mr Cherney to be extradited [290 – 303 JMBT1] and a request was issued on 4 November 2009 by the Spanish Government.

24. No response was received from the Examining Judge in response to Mr Cherney's letter of 6 August 2009. Accordingly, and since three months had elapsed, on 12 November 2009 I filed a submission to the Examining Judge in which we requested that (i) Mr Cherney be admitted to the proceedings and that I be recognized as his legal representative; (ii) the Arrest & Detention Order be annulled and (iii) requested that a deposition be taken from Mr Cherney in his country of residence through the mechanisms for international judicial assistance laid down in the European Convention [304 – 364 JMBT1].

25. On December 7, 2009 the Public Prosecutor asked the Examining Judge to refuse to allow Mr Cherney to enter an appearance in the case and to reject the applications made on his behalf to

11393360

nullify the Arrest & Detention Order and to issue letters rogatory to Israel asking for a deposition to be taken from him. In its submission the Public Prosecutor outlined his view that Mr Cherney's request ought to be regarded as a *"request based on procedural bad faith"* and that that before allowing Mr Cherney to enter an appearance in the proceedings, he should be required to comply with the Arrest & Detention Order (in other words deliver himself into the custody of the Spanish police) and appear in Court in person to answer questions concerning the acts of which he had been accused [365 – 370 JMBT1].

26. On December 14, 2009, the Examining Judge declined to allow Mr Cherney to enter an appearance in the proceedings [371 – 378 JMBT1]. He also refused to authorize Mr Cherney to appoint a lawyer to represent him in the proceedings, and consequently he refused to nullify the Arrest & Detention Order or to send letters rogatory to Israel asking for a deposition to be taken from him in that country. The Examining Judge decided that Mr Cherney's inclusion as a party in the proceedings was subject to his appearance in person before the Court and that, for as long as he failed to do so, he could not have access to the records of the proceedings or appoint a lawyer to defend him or file submissions or make any applications of any kind to the Court. The Examining Judge did not even consider whether or not a deposition should be taken from Mr Cherney in his country of residence.

27. On 15 December 2009, Mr Batkov (also an "imputado" in the Spanish Criminal Proceedings) voluntarily appeared before the Examining Judge to answer questions concerning the criminal proceedings. In contrast to Mr Cherney, the Examining Judge had refused the Public Prosecutor's request that he issue a warrant for the arrest and detention of Mr Batkov. Following Mr Batkov's deposition, the Examining Judge admitted Mr Batkov as a party to the criminal proceedings and recognized me and, another lawyer from my firm, as the lawyers appointed to represent Mr Batkov.

28. I would also mention that on 2 October 2009 the Examining Judge issued a summons to Mr Deripaska and Mr Makhmudov requiring them to appear at the Spanish Court, as criminal suspects ("imputados"), on 16 December 2009 (i.e. the day after Mr Batkov appeared). Unlike what happened with Mr Cherney the Examining Judge, instead of issuing an order for their arrest, merely sent letters rogatory to the Russian authorities asking them to deliver to these

9

persons the summons to appear on 16 December 2009 in front of the Examining Judge [379 – 382 JMBT1].

29. A few days before the date scheduled for the examination, the Russian authorities had replied to the Examining Judge that they had not served the summons on Mr Deripaska and Mr Makhmudov for various reasons; in particular because under the European Convention a minimum period of 50 days should elapse between the date of the summons and the date fixed for making the statement, which was not observed in this case. The Russian authorities also notified the Examining Judge that both Mr Deripaska and Mr Makhmudov and the Russian Public Prosecutor's office were happy for their depositions to be taken in Russia [383 - 386 JMBT1]. Accordingly, on 16 December 2009 neither Mr Deripaska nor Mr Makhmudov appeared at the Spanish Court and the Examining Judge did not order their detention.

30. On 21 December 2009 I filed an appeal with the Court of Appeal against the Examining Judge's decision of 14 December 2009 [387 – 416 JMBT1] in which it was argued that Mr Cherney was not a Spanish national, had never evaded justice in Spain and to the contrary had offered to give his evidence from Israel and that he had no criminal convictions. It was further argued that the decision was a serious limitation of Mr Cherney's fundamental rights to the effective protection of the courts, to present a defense and to due process. The Court of Appeal was invited to order the Examining Judge to allow Mr Cherney to enter an appearance in the proceedings, to revoke the Arrest & Detention Order and to issue letters rogatory to Israel for a statement to be taken from Mr Cherney under the applicable international convention.

31. On 28 January 2010 [417 – 422 JMBT1] we discovered from the Court file that the Examining Judge had decided to send further letters rogatory to Russia in order to take a statement from Mr Deripaska as a suspect ("imputado"), with the Examining Judge and the Public Prosecutor traveling to Moscow for this purpose. At the time I was not aware of there having been any suggestion of any factual or other basis that would justify the difference in treatment (and if there had been any I, in my capacity as Mr Cherney's and Mr Batkov's lawyer, in the later capacity with full access to the Court file, would have been aware of it). Accordingly, in light of the Judge's decision to issue further letters rogatory to Russia, I was

10

optimistic that the Examining Judge would in due course change his mind and agree to take Mr Cherney's evidence in Israel. It was my opinion then, and remains my opinion today (as explained further below), that the continued different treatment of Mr Cherney compared with Mr Deripaska and Mr Makhmudov is totally unjustifiable.

32. On 2 February 2010 (5 days after the decision to travel to Russia to take the statement from Mr Deripaska) the Examining Judge issued a decision declining to give leave to proceed with the appeal filed on behalf of Mr Cherney [423 – 426 JMBT1]. In other words, the Examining Judge decided not to accept the appeal as having been validly filed and therefore refused to transmit the appeal to the Court of Appeal for a decision. The Examining Judge decided that Mr Cherney had no right to appeal any decision or to file any application in the proceedings since he was not a party to them, and that his being admitted as a party was subject to Mr Cherney appearing in person in the Court in order to comply with the Arrest & Detention Order.

33. I filed a complaint against the Examining Judge's decision at the Court of Appeal on 9 February 2010 [427 – 462 JMBT1]. In this complaint, I asked the Court of Appeal to order the Examining Judge to give leave to proceed with our appeal on the ground that the Examining Judge's interpretation of the law was wrong and was hampering Mr Cherney's right to defense and to due process. In addition, we expressed our surprise at what we considered an absolutely irrational and unfair discrepancy in the treatment dispensed to three persons in identical circumstances who were suspected of the same crimes. As explained above, the Examining Judge had agreed to travel to Moscow to take Mr Deripaska's deposition.

34. On 19 February 2010 the Examining Judge informed the Court of Appeal that he had not given leave to proceed with Mr Cherney's appeal since Mr Cherney was not a party to the proceedings and that his becoming a party was subject to him first appearing at the Court, but without giving any explanation of why he was dispensing a different treatment to Mr Deripaska and Mr Cherney that was clearly detrimental to Mr Cherney [463 – 466 JMBT1].

11

11393360

35. On 26 April 2010, the State of Israel refused to extradite Mr Cherney. This refusal was justified by the Israeli authorities on the grounds that no *prima facie* evidence of criminality could be deduced from the application for extradition with respect to the offences of money laundering, tax fraud and illicit association imputed to Mr Cherney by the Spanish Judge [467 – 523 JMBT1].

36. On 4 May 2010 the Court of Appeal rejected Mr Cherney's appeal. The Court of Appeal determined that Mr Cherney was not prejudiced by reason to the requirement that he attend before the Examining Judge in Spain. It further held that:

*To argue that the decision is discriminatory because an order has been made in respect of other accused (Mr Deripaska and Mr Makmudov) to take their statements by commission rogatoire in their countries of origin even though they are accused of the same involvement in the investigated activities is to ignore the content of the warrant of imprisonment, search and arrest of 20 May 2009, which was produced in the appeal against refusal of leave to appeal as Document No. 12. This warrant accused the appellant of acts consisting of the acquisition through companies, personally or through other controlled companies, the companies "Denise Overseas Limited" and "Fairnet Services Limited", of four properties in municipalities of the province of Alicante to launder money from "Izmailovskaya", an international criminal organisation dedicated to the commission of offences against people, such as coercion, threats, murder, against property, in cases of robbery and punishable insolvency and against the Administration of Justice, in cases of corruption (bribery), trafficking of influence and breach of duty and, in a long series stated in the ruling, the other accused Majmudov and Deripaska, are not mentioned. They are only mentioned as members of the parent organisation but not in relation to the activities carried out in Spain. The content of the ruling of 28 January 2010 (Document No. 15 of the appeal against refusal of leave to appeal) accords with the above and it emphasises as a necessary result that a statement must be taken from Oleg Deripaska as the person who sends the money unlawfully obtained in other places that are not Spanish soil, focused on the aluminium business (as members of "Izmailovskaya", they are attributed with the conquest of the market by extortion and murder) to the communal fund known as "Obshchak", whence it was subsequently distributed to the various areas...*

12

11393360

The difference in treatment therefore appears to be based upon the curious argument that the facts imputed to Mr Deripaska, Mr Makhmudov and Mr Cherney were not absolutely identical, since Mr Cherney was suspected of having made various real estate investments in Spain, whereas Mr Deripaska and Mr Makhmudov, although they were suspected of being involved at the highest level in the "Izmailovskaya" organization, were only connected with the funds supposedly laundered in Spain for that criminal organization by Vera Metallurgica SA [524 – 529 JMBT1]. This was the first time that this supposed difference between Mr Cherney on the one hand and Mr Deripaska and Mr Makhmudov on the other had been mentioned; it does not seem to me that this is a reason to treat Mr Cherney and Mr Deripaska differently.

37. On 12 May 2010 the Examining Judge and the Public Prosecutor traveled to Russia to take a statement from Mr Deripaska. After Mr Deripaska's lawyers had entered an appearance in the proceedings to defend Mr Deripaska, they were able to gain access to the file on the case and were authorized by the Judge to obtain scanned copies of the papers on file, which they have been doing regularly since then [530 – 549 JMBT1].

38. I am aware from documents available on the Court file that the taking of Mr Deripaska's evidence in Russia was not without its controversies. The Spanish Court had previously insisted that the statement could only be taken from Mr Deripaska as a formal suspect ("imputado") in order to comply with the requirements of Spanish law, and it seemed that the Russian authorities had agreed to this despite their initial opposition. However, once the documentation relating to execution of the letters rogatory had been returned to Madrid, the Russian authorities stated in them that the deposition had been taken from Mr Deripaska as a witness and not as a suspect ("imputado"). In any event, and for what its worth, the reality is that Mr Deripaska's lawyers in Spain have admitted that Mr Deripaska is a formal suspect ("imputado") and as such they have been permitted to enter and have entered an appearance in the proceedings in order to defend him.

39. On 1 June 2010, on Mr Cherney's behalf, I filed a plea of nullity against the decision of the Court of Appeal in which we once again requested that Mr Cherney be afforded the same

13

11393360

treatment as Mr Deripaska and Mr Makhmudov and that the Order be revoked and Mr Cherney be permitted to provide a statement in his country of residence, since there was no reason at all for such unequal treatment [550 – 583 JMBT1]. The submission of this plea is required by Spanish law in order to subsequently file an appeal to the Constitutional Court.

40. The Court of Appeal rejected the plea of nullity *ad limine* On 17 June 2010, I filed an appeal to the Constitutional Court, in which we argued that both the Examining Judge and the Court of Appeal's decisions were infringing Mr Cherney's constitutional rights to the effective protection of the courts, to a proper defense, to due process and to fair treatment [584 – 646 JMBT1]. We asked the Constitutional Court to restore Mr Cherney's fundamental rights by ordering the annulment of the lower Courts' decisions and to revoke the Order on the grounds that it was disproportionate and unreasonable.

41. While the appeal to the Constitutional Court was awaiting a decision, the Court again gave Mr Makhmudov a second opportunity to come to Spain to make a deposition as a suspect ("imputado"), and summoned him by means of letters rogatory to appear in Madrid on 24 January 2011 [647 – 654 JMBT1]. Although the Russian authorities reported initially that the summons had been correctly served on Mr Makhmudov [655 – 658 JMBT1], on 19 January 2011, they informed the Spanish Court that Mr Makhmudov would not be able to attend for health reasons, which were not explained but which, according to the Russian authorities, required prolonged treatment. (Mr Makhmudov also wrote a personal letter to the Examining Judge explaining his health condition). The Russian authorities again requested that the statement be taken from Mr Makhmudov in Russia [659 – 660 JMBT1].

42. On 24 January 2011 neither Mr Makhmudov, nor the other person who had been summoned to appear on that day, Mr Eugene Aschembrenner appeared in court. In view of the fact that these persons failed to appear, the Examining Judge ordered, on the one hand, the search, arrest and detention of Mr Aschembrenner and, on the other hand, on 18 February 2011 that further letters rogatory be sent to Russia for Mr Makhmudov to make a deposition by video conference [661 – 670 JMBT1].

14

43. When I discovered on 4 March 2011 that the Examining Judge had agreed to take Mr Makhmudov's deposition as a suspect ("imputado") by video conference, we filed another submission on behalf of Mr Cherney in which we again informed the Court Examining Judge that Mr Cherney was prepared to make a statement for the Court in his country of residence through whatever international judicial assistance mechanism the Examining Judge considered most appropriate, either by the Judge traveling to Israel or by video conference, as had been agreed for the other two persons suspected of the same crimes, Mr Deripaska and Mr Makhmudov [671 – 677 JMBT1].

44. On 7 March 2011 the Court ordered that our submission be passed to the Public Prosecutor to obtain his opinion on this new application by Mr Cherney [678 – 679 JMBT1]. On 18 March 2011 the Public Prosecutor again objected to the request and again argued that Mr Cherney could not file petitions of any kind since he had not entered an appearance in the proceedings and that this was subject to his appearing in person at the Court in order to comply with the order for his search, arrest and detention [680 – 681 JMBT1]. On 21 March 2011, following consideration of the Public Prosecutor's opinion, the Examining Judge rejected our submission out of hand and returned it to me [682 – 687 JMBT1].

45. We decided to file two submissions before the Examining Judge requesting him to reconsider his initial decision: one submission was filed in the name of Mr Cherney himself [688 – 698 JMBT1] and the other in the name of Mr Batkov [699 – 724 JMBT1]. In both challenges we once again requested that Mr Cherney be afforded equal treatment to that given to Mr Deripaska and Mr Makhmudov, that the Warrants be cancelled and that he be permitted to make a statement in his country of residence, either in person or by video conference. I should explain that the reason for filing the challenge in Mr Batkov's name too was because my colleagues and I considered that the Court's decision not to allow Mr Cherney to make a statement in the same conditions as Mr Deripaska and Mr Makhmudov infringed not only Mr Cherney's rights but also those of Mr Batkov, who had been declared a suspect solely as a consequence of his professional position as Mr Cherney's lawyer. I was, and continue to be, of the opinion that if Mr Cherney was not given the opportunity to explain the investments made in Spain and the origin of the funds used for these investments, this would also seriously restrict the ability of Mr Batkov to defend the allegations made against him.

15

11393360

46. On 29 March 2011 the challenge filed on behalf of Mr Cherney was rejected by the Examining Judge and the papers were returned to me because the Court considered that Mr Cherney was not a party to the proceedings and therefore could not file a submission of any kind in respect of the proceedings. The Judge, however, did give leave to proceed with the challenge filed by Mr Batkov because he had validly entered an appearance in the case, and the Examining Judge therefore passed it on to the Public Prosecutor for him to comment upon (this is standard practice in Spanish proceedings) [725 – 728 JMBT1].

47. On 31 March 2011 the Public Prosecutor submitted that the challenge by Mr Batkov should be thrown out, since in his opinion Mr Batkov could not appeal against a decision that only affected Mr Cherney and that this was a form of abuse of process [729 – 730 JMBT1]. On 17 May 2011 the Court rejected the challenge by Mr Batkov, repeating the arguments of the Public Prosecutor [731 – 734 JMBT1].

48. On 24 May 2011 I filed an appeal to the Court of Appeal dated 4 May 2010 on behalf of Mr Batkov in which we argued that the decision to treat Mr Cherney in such a discriminatory manner with respect to the other suspects also infringed Mr Batkov's right of defense [735 – 779 JMBT1]. The Public Prosecutor once again objected to the appeal we had filed on behalf of Mr Batkov on 1 June 2011, repeating his argument that Mr Batkov could not appeal against a decision that only affected Mr Cherney [780 – 783 JMBT1]. On 15 June 2011 the Court of Appeal confirmed that it would substantively hear the appeal and steps were taken to request an oral hearing. However, one was not granted and on 17 June 2011 the Court of Appeal rejected Mr Batkov's appeal on the grounds that he was not permitted to appeal decisions that affected Mr Cherney [784 – 787 JMBT1].

49. I should also mention that in the interim, on 1 June 2011, the Constitutional Court decided to reject the appeal we had filed in the name of Mr Cherney a year earlier since it considered that it lacked sufficient constitutional significance to merit consideration by the constitutional court [788 – 789 JMBT1].

16

11393360

50. Finally, I should record that, whilst agreement was reached as between Russia and Spain as to Mr Makhmudov being examined by video link and that deposition was due to take place on 7 July 2011, it was in fact was aborted due to technical difficulties with the video link. It has since been rescheduled to take place on 19 July 2011.

51. Since becoming aware of the existence of the criminal proceedings in Spain, Mr Cherney has sought to avail himself of every possible legal route of appeal in Spain in order to get the Warrants revoked. I fail to understand the reasons why the Spanish courts have been systematically denying Mr Cherney this possibility while dispensing a much more favourable treatment to other suspects to whom the same facts and offences are attributed. Aside from attending before the Examining Judge in Spain, which I understand Mr Cherney is not prepared to do, Mr Cherney's only option is to bring a claim before the European Court of Human Rights and such claim is under consideration.

52. I have been told that in the course of the hearing of 20 June, Mr Deripaska's lawyers speculated that there must be some basis on which Mr Cherney has been the subject of an arrest warrant (in contrast to Mr Deripaska and Mr Makhmudov) which he is not revealing to the English Court. Prior to the Court of Appeal's ruling on 10 May 2010 (which I have explained in paragraph 35 above) no explanation had been provided by the Examining Judge or the Spanish Court as to why Mr Cherney should be treated differently to Mr Deripaska and Mr Makhmudov. As explained above, on 10 May 2010, the Court of Appeal indicated that the difference between Mr Cherney and Messers Depripaska and Makhmudov was the fact that Mr Cherney was suspected of having made various real estate investments in Spain. In my opinion what has been said by the Court of Appeal in its order of 10 May 2010 is not a sufficient or valid reason to justify the different treatment that Mr Cherney has been afforded. I can confirm that for my part I am not aware of there being any differentiating factors between Mr Cherney and other "imputados" (in particular Mr Deripaska and Mr Makhmudov) other than that identified in the order of 10 May 2010 which could have provoked or could justify the difference in treatment.

**Statement of Truth**

17

11393360

I believe that the facts stated in this witness statement are true.

Signed: ........*(signature)*........

Joaquín Matías Burkhalter Thiébaut

Date: 18th July 2011

18

11393360

Claim No. 2006 Folio 1218

## IN THE HIGH COURT OF JUSTICE

## QUEEN'S BENCH DIVISION

## COMMERCIAL COURT

B E T W E EN:

MICHAEL CHERNEY

**Claimant**

- and -

OLEG DERIPASKA

**Defendant**

---

### WITNESS STATEMENT OF
### JOAQUIN MATÍAS BURKHALTER THIÉBAUT

---

Dechert LLP
160 Queen Victoria Street
London
EC4V 4QQ
Te: 0207 184 7394
Fax: 0207 184 7001
Solicitors for the Claimant

19

11393360